SCANNED
DATE: 4/8/04
BY:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

R E C E I V E D
Clerk's Office
USDC, Mass.
Date _4-6-04_
By _____
Deputy Clerk

|  |  |
|---|---|
| JOSE D. LARA | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MICHAEL CORSINI, | ) |
|  | ) |
| Respondent. | ) |

Civil Action No. 03-12574-RCL

## RESPONDENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PETITIONER'S PETITION FOR
## WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

The respondent hereby submits this memorandum in opposition to the petition for writ of

habeas corpus filed by Jose D. Lara ("the petitioner"). As set forth below, the petition pursuant

to 28 U.S.C. § 2254 should be denied where the Massachusetts Appeals Court's decision

resolving the petitioner's claims against him was neither contrary to, nor an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court.

## STATEMENT OF THE CASE

**I.      State Court Trial and Direct Appeal**

On April 14, 1999, a Suffolk County grand jury returned an indictment charging the

petitioner (along with a co-defendant, Juan Peredes[1]) with trafficking in cocaine in violation of

---

[1] The name of the petitioner's co-defendant is alternately spelled "Paredes" and "Peredes" in the documents in the record in this case. Since "Peredes" is the spelling used by the Massachusetts Appeals Court in its decision, that spelling will be used throughout this memorandum.

M.G.L. ch. 94C, § 32E(b)(2). *See* Brief for the Commonwealth, *Commonwealth v. Jose Lara*, at

p. 2, a copy of which is contained in the respondent's Supplemental Answer (hereinafter, "Supp.

Ans.") as Exhibit 3. A jury trial commenced on January 23, 2001. *Id.* After the

Commonwealth's case in chief, the petitioner filed a motion for a required finding of not guilty,

which the judge denied. *Id.* After the petitioner rested, he renewed his motion for a required

finding of not guilty, which the judge again denied. *Id.*

On January 24, 2001, the jury found both the petitioner and his co-defendant guilty as

charged. *See* Supp. Ans., Ex. 3. The trial judge sentenced the petitioner to a term of three to six

years at MCI Cedar Junction. *Id.* The petitioner filed a timely notice of appeal. *Id.*

On August 1, 2003, the Massachusetts Appeals Court ("the Appeals Court") affirmed the

petitioner's conviction. *Commonwealth v. Jose Lara*, 58 Mass. App. Ct. 915 (2003), Supp. Ans.,

Ex. 4. The petitioner filed an application for leave to obtain further appellate review

(hereinafter, "ALOFAR") on or about August 11, 2003. Supp. Ans., Ex. 5. The Massachusetts

Supreme Judicial Court ("the SJC") denied the petitioner's application on October 3, 2003.

Supp. Ans., Ex. 6.

## II.    The Instant Habeas Petition[2]

The petitioner's claims in the instant petition are (a) that there was insufficient evidence from which a jury could convict him of trafficking in cocaine and (b) that the Commonwealth's failure to preserve a set of footprints which the petitioner claims could have been exculpatory violated his rights under the Equal Protection Clause and his right to effective cross-examination under the Sixth Amendment.[3]

---

[2] In his habeas corpus petition, the petitioner also mentions claimed errors in (a) the trial judge's jury instructions with respect to reasonable doubt and the presumption of innocence and (b) the judge's refusal to give a requested "mere presence" instruction. These claims were not, however, exhausted in the state court, since the petitioner did not bring the constitutional nature of these claims to the SJC's attention in his ALOFAR. *See generally,* Supp. Ans., Ex. 5. The claim based on the jury instructions on reasonable doubt and the presumption of innocence was not exhausted in the state court because neither the factual nor the legal basis of this claim was presented to the SJC. *See, e.g., Rose v. Lundy*, 455 U.S. 509, 518-19 (1982); *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994), *cert. denied,* 513 U.S. 1129 (1995); *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir. 1989)(it is petitioner's heavy burden to demonstrate that his now-claimed federal errors were presented to the state's highest court). *See also* Supp. Ans., Ex. 5. The claim based on the failure to give the requested "mere presence" instruction is also not exhausted because, while the factual basis of this claim was presented to the SJC, the constitutional basis was not. *See Scarpa*, 38 F.3d at 6; *Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 819 (1st Cir. 1988); Supp. Ans., Ex. 5. Rather, the claim was presented merely as one of state law error, which is not sufficient for exhaustion purposes. *See id.; Adelson v. DiPaola*, 131 F.3d 259, 261-62 (1st Cir. 1997).

Since it is well-established that including unexhausted claims would mandate dismissal of the petition, it must be presumed that the petitioner has waived his unexhausted claims based on jury instructions. In the event that the petitioner persists in pursuing claims based on the jury instruction issues, the respondent reserves his right to move for dismissal of the petition.

[3] The petitioner also asserts that there was error in the trial judge's refusal to give a requested jury instruction to the effect that the failure of the police to conduct tests on the footprints could be used to create reasonable doubt. This claim was never presented to the state court as a constitutional error; rather it was merely presented as a state law issue. *See* ALOFAR, Supp. Ans., Ex. 5. The Appeals Court analyzed this claim only with respect to state law. *See Commonwealth v. Lara* 58 Mass. App. Ct. 915 (2003), Supp. Ans. Ex. 4. Accordingly, the claim

(continued...)

## STATEMENT OF FACTS AND TRIAL JUDGE'S INSTRUCTIONS

The Appeals Court's recitation of facts is entitled to a presumption of correctness under

28 U.S.C. § 2254(e)(1). *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v.*

*DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3

(D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption

of correctness under former habeas statute applied to "factual determinations made by state

courts, whether the court be a trial court or appellate court").   This deference extends to

inferences drawn by the state court from those factual determinations as well. *See Parke v.*

*Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

The Appeals Court found that the evidence presented at trial included the following:

> The drugs in question were found by police buried under an inch of snow at the
> base of a pine tree in the Arnold Arboretum.  Leading to the tree was a single set
> of footprints.  The police had observed defendant Peredes, whom they had under
> surveillance, walk toward that tree moments before the drugs were uncovered.
> The police testified that the footprints matched the new footprints Peredes made
> while accompanying the police back to the tree.

> Prior to walking toward the tree, Peredes had been observed leaving 50 Archdale
> Road with the codefendant Lara.  Lara and Peredes made a journey, Lara partly by
> automobile and Peredes on foot, by a circuitous route from 50 Archdale Road to
> the Arboretum.  The evidence permitted a reasonable inference that Lara was
> acting as a lookout and providing supervision over the actions of Peredes, and that
> the conduct of Peredes was consistent with making a quick dash to hide
> something at the tree, with the supervision and assistance of Lara.

---

[3](...continued)
has not been exhausted at the state court level and cannot be brought before this Court in a
habeas petition. *See Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)("the exhaustion
requirement requires a habeas applicant to do more than scatter some makeshift needles in the
haystack of the state court record.  The ground relied upon must be presented face-up and
squarely; the federal question must be plainly defined.  Oblique references [that] hint that a
[federal] theory may be lurking in the woodwork will not turn the exhaustion trick.").

The expert testimony offered by the Commonwealth permitted the jury to interpret the events described in the evidence as the hiding of a stash of drugs in a location that was convenient but deniable in order to facilitate the sale and distribution of drugs via a delivery service operation.

*Commonwealth v. Lara,* 58 Mass.App.Ct. 915 (2003), Supp. Ans., Ex. 4.

## ARGUMENT

I.     **THE PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF WHERE THE APPEALS COURT'S ADJUDICATION OF HIS CLAIM WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW.**

### A.     Standard of Review

Since the instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy,* 521 U.S. 320, 336 (1997). *See also* 28 U.S.C. § 2254. AEDPA "places a new constraint on the power of a federal habeas court to grant a state petitioner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Williams v. Matesanz,* 230 F.3d 421, 426 (1st Cir. 2000)("a federal [habeas] court operates within a closely circumscribed sphere"). As the Supreme Court recently reiterated, AEDPA requires a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti,* 537 U.S. 19, 23 (2002)(*per curiam*), quoting *Lindh,* 521 U.S. at 333, n.7. In relevant part, AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." *See* 28 U.S.C. §2254(d)(1-2); *see also Tyler v. Cain*,

533 U.S. 656, 660 (2001).   In addition, under AEDPA, state court determinations of factual

issues "shall be presumed to be correct" unless the petitioner rebuts this "presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Coombs*, 202

F.3d at 18.

　　　　1.　　　The "Contrary To" Prong

A state court decision is "contrary to" clearly established Supreme Court precedent in

only two circumstances: (a) where "the state court applies a rule that contradicts the governing

law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that

are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives

at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. at 405-06.

Under either scenario, in order to fall within the "contrary to" clause, the state court decision

must be "substantially different," diametrically different," "opposite in character or nature," or

"mutually opposed" to clearly established Supreme Court law. *Id.*

　　　　2.　　　The "Unreasonable Application Of" Prong

A state court decision involves an "unreasonable application" of Supreme Court

precedent "if the state court identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."

*Williams v. Taylor*, 529 U.S. at 407-09, 413.  Merely that the state court reached an incorrect

result is not sufficient -- the result also must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93,

96 (1st Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303

F.3d 24, 36-37 (1st Cir. 2002)(en banc)("'some increment of incorrectness beyond error is

6

required' . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court"), *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Where, for instance, the state court reaches a result that is "devoid of record support for its support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied." *McCambridge*, 303 F.3d at 37, *citing O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied* 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.), *cert. denied* 534 U.S. 925 (2001). In order for a federal habeas court to find that the "unreasonableness" prong has been met, the state court's determination of either the law or the facts must be *objectively* unreasonable. *See Williams v. Taylor,* 529 U.S. at 411; *Williams v. Matesanz*, 230 F.3d at 426-27; *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright-line rule as to what constitutes an "objectively unreasonable" application of federal law or determination of facts. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he term 'unreasonable' is no doubt difficult to define"). As the Supreme Court has made clear, however, an incorrect state court determination is not necessarily an unreasonable one. *Id.* ("the most important point is that an unreasonable application of federal law is different from an *incorrect* application of federal law")(emphasis in original). It is well-settled that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application [or determination] must also be unreasonable." *Id.* at 411.

The First Circuit's ruling with respect to AEDPA is consistent with the standard articulated by the Supreme Court in *Williams*. The First Circuit has held that AEDPA:

> does not empower a habeas court to grant the writ merely because it disagrees with the state court decision, or because, left to its own devices, it would have reached a different result. Rather, for the writ to issue, the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.

*O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Williams v. Matesanz*, 230 F.3d at 423 (expressly recognizing the congruence between *O'Brien* and *Williams v. Taylor*). This same standard should be applied to determine whether a state court's decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2). *See Torres*, 223 F.3d at 1108(reasonableness standards under § 2254(d)(1) and (d)(2) are the same).

**B.      The Massachusetts Appeals Court's Decision on the Sufficiency of the Evidence Was Neither Contrary To, Nor an Unreasonable Application of, Established Federal Law**

The Massachusetts Appeals Court's decision relative to the petitioner's claim that there was not sufficient evidence to prove each element of the crime of which he was convicted was neither contrary to, nor an unreasonable application of, established Supreme Court law.

1.    Federal Law to Be Applied

The task before a habeas court reviewing a claim of insufficient evidence under 28 U.S.C. § 2254(d)(1) is not to sit as another appellate court and conduct an analysis under *Jackson v. Virginia*, 443 U.S. 307 (1979) by taking a "hard look at the record," *United States v. Czubinski*, 106 F.3d 1069, 1073 (1st Cir. 1997), as if the trial had occurred in the federal district court. Rather, the habeas court's task is to examine the state court's resolution of the claim and determine whether the state court decision either contravened or unreasonably applied the

8

holding in *Jackson v. Virginia*. *See Williams v. Taylor*, 529 U.S. at 405-08; *see also Restrepo v. DiPaolo*, 1 F.Supp.2d 103, 105 (D.Mass.), *aff'd* 181 F.3d 80 (1st Cir. 1980)(the AEDPA altered the nature of habeas review and precludes *de novo* review of claims of insufficient evidence). Here, the Appeals Court's conclusion that the evidence was sufficient to convict the petitioner of trafficking in cocaine fully comported with *Jackson* and provides the petitioner with no basis for habeas relief.

The Appeals Court's decision was not contrary to *Jackson v. Virginia* where it applied the correct standard to the petitioner's sufficiency of the evidence claim and where it did not reach a conclusion opposite to that of the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. at 405-06; *Hurtado v. Tucker*, 245 F.3d 7, 12 (1st Cir. 2001)(Massachusetts courts apply the *Jackson v. Virginia* standard to sufficiency claims). The Appeals Court reviewed the petitioner's claim by looking at the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Commonwealth v. Latimore*, 378 Mass. 671, 677 (1979), *quoting Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), in accordance with the standard set forth by both the United States Supreme Court and the SJC. Accordingly, the Appeals Court's decision must be analyzed to determine whether it constituted an unreasonable application of *Jackson v. Virginia*.

The question is not whether the federal habeas court would reach the same conclusion as that of the Appeals Court, but whether the state court's determination falls within "the realm of reasonable outcomes." *Williams v. Matesanz*, 230 F.3d at 429; *Vieux v. Pepe*, 184 F.3d 59, 66 (1st Cir. 1999). An examination of the state court's decision reveals an analysis and a conclusion

that are supported by the record in that case and are in no way arbitrary.

When a jury returns a general verdict of guilty based on a single charge supported by alternative legal theories of liability and the evidence is sufficient to support one of the theories of prosecution but not the other, the conviction does not offend due process.[4] *Griffin v. United States*, 502 U.S. 46, 56-60 (1991); *Turner v. United States*, 396 U.S. 398, 420 (1970)("when a jury returns a guilty verdict on an indictment charging several offense acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged"). *See also Schad v. Arizona*, 501 U.S. 624, 645 (1991)(due process does not require juror unanimity on the theory of culpability).

### 2.    Evidence Relating to the Petitioner's Conviction

The Appeals Court found that the evidence presented at trial was sufficient to support a jury's finding the petitioner guilty of trafficking in cocaine on the theories of constructive possession and joint venture. *See Commonwealth v. Jose Lara*, 58 Mass. App. Ct. 915 (2003), Supp. Ans., Ex. 4. Since the facts adduced at trial show that the evidence was sufficient to convict the petitioner on both of the theories on which he was charged -- where Supreme Court law requires only evidence sufficient to support one theory -- the denial of the petitioner's claim was not contrary to clearly established law as determined by the Supreme Court. *See Griffin*, 502

---

[4] Massachusetts law, which was applied by the Appeals Court in this case, offers an even greater level of protection to the petitioner. Massachusetts has specifically rejected the Supreme Court's holding in *Griffin v. United States*, 502 U.S. 46 (1991), and provides that there must be evidence to support each alternative theory submitted to the jury, i.e., joint venture and principal liability theories, to uphold a general verdict of guilty. *See Commonwealth v. Plunkett*, 422 Mass. 634 (1996). In the instant case, the Massachusetts Appeals Court specifically found that there was sufficient evidence to convict the petitioner on both a direct liability (constructive possession) theory and as a joint venturer. *See Supp. Ans., Ex. 4.

U.S. at 56-60.

"The essential elements of the crime of possession with intent to distribute are (1) the knowing or intentional possession of a controlled substance and (2) the intent to distribute or dispense that substance." *Commonwealth v. Gonzalez*, 47 Mass.App.Ct. 255, 257, *rev. denied* 430 Mass. 1105 (1999). Possession of an object depends upon a finding of the petitioner's intention and ability to exercise and control over the object. *Commonwealth v. Rivera*, 31 Mass. App. Ct. 554, 556 (1991). Possession may be actual as well as constructive, it need not be exclusive, and it may be proved by circumstantial evidence. *Id. See also United States v. Munoz*, 36 F.3d 1229, 1235, n.2 (1st Cir. 1994), *cert. denied*, 513 U.S. 1179 (1995); *United States v. Zavala Maldonado*, 23 F.3d 4, 6-8 (1st Cir.), *cert. denied*, 513 U.S. 975 (1994).

Under Massachusetts law, a person may be found guilty as a joint venturer in either of two ways. *See Commonwealth v. Ortiz*, 424 Mass. 853, 856 (1997). A defendant can be convicted as a joint participant in a felony if he was "'(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary.'" *Commonwealth v. Longo*, 402 Mass. 482, 486 (1988), *quoting Commonwealth v. Bianco*, 388 Mass. 358, 366 (1983). A defendant may also be convicted as a joint participant in a felony if he "aids in the commission of a felony, or is an accessory thereto before the fact by counseling, hiring or otherwise procuring such felony to be committed." M.G.L. ch. 274, § 2. *See also Commonwealth v. Raposo*, 413 Mass. 182, 184-85 (1992); Nolan & Henry, *Criminal Law*, § 633 at 521-23 (2d ed. 1988 & 1999 Supp.). While joint venturer status required something more than mere acquiescence, physical participation is not required so long as there is "'association with the

11

criminal venture and any significant participation in it.'" *Raposo*, 413 Mass. at 185, *quoting*

*Commonwealth v. Morrow*, 363 Mass. 601, 609 (1973).

In this case, the Appeals Court's determination that, based upon a review of the evidence,

there was sufficient evidence for a rational fact finder to find the petitioner guilty of trafficking in

cocaine on either a direct liability theory or a theory of joint venture was not objectively

unreasonable. Taking the evidence in the light most favorable to the Commonwealth, the jury

was warranted in finding facts which suggested that the petitioner was involved in drug

trafficking as a joint venturer and not merely present when his co-defendant stashed the drugs.

As the Appeals Court noted,

> There were five specific circumstances that can be weighed as "plus" factors, "i.e.,
> incriminating evidence of something other than presence." *Commonwealth v.
> Velasquez*, 48 Mass. App. Ct. 147, 149 (1999). *See Commonwealth v. Albano*,
> 373 Mass. 132, 134-35 (1977), *Commonwealth v. Brzezinski*, 405 Mass. 401, 410
> (1989). *See also United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976).
> These are: (1) [the petitioner] departing 50 Archdale Road with Peredes; (2) [the
> petitioner's] unusual car ride, slowly trailing behind as Peredes walked from 50
> Archdale Road to the Arboretum; (3) Lara meeting up, talking, and walking with
> Peredes in the Arboretum; (4) [the petitioner] standing on high ground and
> surveilling the Arboretum while Peredes stashed the drugs behind the pine tree;
> and (5) [the petitioner] meeting up, walking and conversing again with Peredes
> after the drugs were stashed.

Supp. Ans., Ex. 4. The Appeals Court analyzed these "plus factors," noting that:

> Of the "plus factors," numbers two, four, and five have "significant persuasive
> force that [the petitioner] was more than an observer." *Commonwealth v. Maillet*,
> 54 Mass. App. Ct. 910, 911 (2002). While [the petitioner's] going to the
> Arboretum and meeting up with Peredes again after the drugs were stashed
> parallels the factors found insufficient in *Commonwealth v. McKay*, 50 Mass.
> App. Ct. 604 (2000), the unusual nature of [the petitioner's] car ride and active
> surveillance from high ground tip the scales here; the jury had evidence sufficient
> reasonably to infer [the petitioner's] agreement to participate and take meaningful
> action in the venture. *Compare id.* at 609, *citing Commonwealth v. Mendes*, 46
> Mass. App. Ct. 581 (1999). In the instant case, with the plus factors we have

enumerated, "there was sufficient evidence that the defendant actively participated as a lookout to take the case to the jury." *Commonwealth v. McKay, supra* at 610 (Brown, J., dissenting).

In addition, the evidence at trial was sufficient to support the inference that the petitioner himself was involved in trafficking, rather than mere possession. Taking the evidence in the light most favorable to the Commonwealth, there was sufficient to prove that the defendant possessed 38.2 grams of cocaine, with a level of seventy-five percent (75%) purity. Supp. Ans., Ex. 3, pp. 9-10. The cocaine was also packaged in many discrete individual packages. *Id.* From this evidence, the jury was entitled to infer the petitioner's intent to distribute the cocaine. *See Commonwealth v. Salcedo*, 405 Mass. 346, 350 (1989); *Commonwealth v. Bongarzone*, 390 Mass. 326, 344 (1983); *Commonwealth v. Scala*, 380 Mass. 500, 511 (1980). To the extent that conflicting inferences might have been drawn from any of the evidence, those conflicts were for the jury to resolve, and they do not render the evidence insufficient. *See Stewart v. Coalter*, 48 F.3d 610, 616 (1st Cir. 1994), *cert. denied,* 516 U.S. 853 (1995).

In light of the foregoing, the Appeals Court's decision that the petitioner was guilty as a joint venturer was, at the very least, objectively reasonable. The Appeals Court's denial of the petitioner's appeal of his conviction was not, therefore, an unreasonable application of clearly established federal law as determined by the Supreme Court. Under AEDPA, the key question is not whether this Court concludes that the Commonwealth had proved its case, but rather whether the state court decision is arbitrary and without support in the record, reaching an "increment of incorrectness beyond error . . . great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge*, 303 F.3d at 37. The Appeals Court's decision was not unreasonable or contrary to Supreme Court law, and thus the

petition should be dismissed.

**C.    The Massachusetts Appeals Court's Decision with Respect to the Petitioner's Claim That the Evidence of Footprints Should Have Been Preserved Was Neither Contrary To, Nor an Unreasonable Application of, Established Federal Law**

In addition to claiming that there was insufficient evidence to convict him of drug trafficking, the petitioner also claims that the failure of the police to preserve evidence leading to the spot where the drugs were found violated his constitutional rights. The petitioner's claim must fail, however, because there is no established federal law requiring law enforcement officials to gather or test evidence which was never in their possession. The petitioner's complaint, in sum, is that the police failed to take photographs to record the appearance of the footprints leading to the tree under which the drugs were found, and that the police failed to take the co-defendant's sneakers from him (presumably, to see if these sneakers matched the footprints). This complaint is a state law claim based on perceived flaws in the police's investigation of the crime, and the Appeals Court properly analyzed this state law issue under *Commonwealth v. Bowden*, 379 Mass. 472 (1980). Supp. Ans., Ex. 4. Even if the Appeals Court's judgment on this point were shown to be incorrect, errors of state law, in and of themselves, cannot provide a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The petitioner attempts to transform his state law claim into a federal constitutional claim by citing to *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), in which the Supreme Court addressed a claim arising out of a police department's failure to test certain evidence in its possession. However, the concerns which the Court addressed in *Arizona* are not found in this

14

case. *Arizona*, 488 U.S. at 58. In *Arizona*, the Court looked at the implications of a law enforcement agency's loss of evidence (whether by destruction, failure to test, or simple loss) when such evidence had been in law enforcement's exclusive control. *Id.* at 57. The situation in the instant case is just the opposite, since the evidence which the plaintiff claims should have been tested was *never* taken into the police's control. Accordingly, the petitioner was not deprived of his ability to present evidence at trial, since either he or his agent could have recorded, preserved and/or tested the footprint evidence passed over by the police. The holding and rationale of *Arizona* cannot logically be expanded to cover situations where the police never possessed the evidence about which a defendant complains. *See Arizona*, 488 U.S. at 57 (conducting analysis about claims of "loss of evidence *attributable to the Government*") (emphasis added). More importantly, however, the Appeals Court's decision not to make this leap of logic cannot be seen as contrary to established Supreme Court precedent or an unreasonable application of such precedent. *See Williams v. Taylor*, 529 U.S. at 405-08.

Finally, even assuming that this Court were to expand the holding of *Arizona* in the manner requested by the petitioner, the petitioner's claim still cannot survive since he does not meet the standard set forth in *Arizona*. *Arizona*, 488 U.S. at 58. The Supreme Court has clearly established that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona*, 488 U.S. at 58. Here, the petitioner has not made and cannot make such a showing of bad faith by the police.[5] Without such a showing of bad faith, there is no constitutional violation.

---

[5] At trial, the petitioner's counsel developed the facts that the police has not taken the co-defendant's sneakers as evidence and had not taken pictures of the footprints in the snow. *See*

(continued...)

*See Arizona*, 488 U.S. at 58. The petitioner cannot, therefore, show that the state court's decision was either contrary to established federal law or an unreasonable application of such law, and therefore this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the respondent requests that this Court deny the petition for a writ of habeas and dismiss the petitioner's complaint in its entirety.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

Maura D. McLaughlin (BBO # 634923)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ex. 2857

Dated: April 6, 2004

---

[5](...continued)
Supp. Ans., Ex. 2, pp. 16-19; Supp. Ans., Ex. 3, p. 15. The petitioner's counsel also argued these perceived inadequacies in the investigation to the jury on closing argument. *See id.* The petitioner did not, however, point to any bad faith on the part of law enforcement officers in failing to preserve this evidence, and he cannot do so now.

### Certificate of Service

I hereby certify that a true copy of the above document was served upon the petitioner, Jose D. Lara, on April 6, 2004, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, to him as follows: Jose D. Lara, Bay State Correctional Center, P.O. Box 73, Norfolk, Massachusetts 02056.

Maura D. McLaughlin

### Certificate of Compliance
### with Court's Order re: Local Rule 7.1

This memorandum is submitted in accordance with this Court's order of February 18, 2004, which permits the moving party to dispense with the conference requirement of Local Rule 7.1.

Maura D. McLaughlin